**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------------x
**ADONIS R. GOLDEN,**

                Plaintiff,

           - v-

**CITY OF NEW YORK, RICHARD A. BROWN,**
**KENNETH APPELBAUM,**
**CRAIG STEPHEN BROWN, ERIC ROSENBAUM,**
**HEATHER PALMORE, ROBERT ROES 1-10,**
**CHRISTIAN KANEHL, ALBERT MARINELLI**
**and JOHN DOES 1-10,**

                Defendants.
------------------------------------------------------------------x

**OPINION AND ORDER**

**03-CV-4964 (NG) (MDG)**

**GERSHON, United States District Judge:**

      Plaintiff Adonis R. Golden brings this suit against defendants City of New York and New York City Police Department Detective Christian Kanehl, alleging claims for violation of his rights under 42 U.S.C. § 1983, false arrest and imprisonment, malicious prosecution, abuse of process, and negligence.[1] These claims arise from plaintiff's arrest and prosecution for, among other charges, rape, robbery, and murder. Defendants move for summary judgment on all claims pursuant to Rule 56 of the Federal Rules of Civil Procedure. Alternatively, with respect to plaintiff's state law claims, they seek dismissal. Plaintiff moves for summary judgment on his false arrest and imprisonment,

---

[1] The initial named defendants in this case also included the Queens District Attorney, Richard A. Brown; Queens Assistant District Attorneys Kenneth Applebaum and Eric Rosenbaum and former Queens Assistant District Attorneys Craig Stephen Brown and Heather Palmore; New York Police Department detective Albert Marinelli; and several unidentified police officers and prosecutors. However, pursuant to this court's opinion and order dated January 27, 2005, and plaintiff's subsequent agreement at the July 6, 2005 pre-motion conference, the only remaining defendants are the City of New York and Detective Kanehl.

1

malicious prosecution, and Section 1983 claims.

## I. BACKGROUND

Unless otherwise indicated, the undisputed facts establish the following:

On November 9, 1996, Karla Phillips was raped and robbed behind a residence on 233rd Street. According to the rape victim, a man grabbed her from behind so she could not run, put a gun to her head, and dragged her into a driveway. The man fired one round from his gun into the air, and someone looked out the window and screamed. The man then dragged the victim onto 233rd Street and behind a residence and proceeded to rape her and force her to perform oral sex on him. Afterwards, the victim was able to flee and run to a police car parked on the corner of 233rd Street and 135th Avenue. She told the officers of the preceding events, whereupon they called for back-up and immediately canvassed the area. The officers recovered one spent shell casing in the driveway into which the victim had been dragged. The officers also drove the victim around the block in an attempt to locate the man who raped her. The victim described the rapist as a black male, twenty-four to twenty-eight years old, five feet nine inches to five feet ten inches tall, weighing one-hundred forty-five pounds to one-hundred fifty-five pounds, and wearing a black three-quarter length leather jacket.

On the same day, November 9, 1996, a witness, Claire Williams, whose residence looked onto the driveway into which the victim was dragged, told police officers that she heard a gunshot from her driveway, looked out the window, and saw two people struggling. She saw a woman bent over at the waist and a man with something in his hand. Williams then screamed, and the man grabbed the woman and headed in the direction towards the street.

On December 11, 1997, Joyajo Scruggs informed the New York City Police Department and

the Queens County District Attorney's Office that he had information regarding a rape and homicide.[2] Scruggs entered into a cooperation agreement with the Queens County District Attorney's Office in which he agreed to provide information he had regarding the rape, and the murder of Dean Smith, in exchange for a plea deal and a reduced sentence. Detective Kanehl subsequently interviewed Scruggs. Scruggs stated that, in November 1996, Westerman had paged him and, when he returned Westerman's call, Westerman told Scruggs that the police were outside his residence, and he was uncertain as to what he should do. According to Westerman, he and plaintiff had planned to rob a woman on 234th Street that day but Westerman had returned home. Westerman further told Scruggs that plaintiff later arrived at Westerman's residence, told Westerman that he had grabbed the female from behind, dragged her up a driveway between two houses and demanded money from her; he attempted to rape her but someone living in one of the houses looked out the window, whereupon he fired his gun; he then raped her and forced her to perform oral sex on him.

As a result of the statements obtained from Scruggs, Detective Kanehl located and interviewed Westerman on January 27, 1998. According to Detective Kanehl's deposition testimony regarding the interview and a handwritten statement by Westerman,[3] back in November of 1996, plaintiff had a small, black automatic gun, and he admitted to Westerman that he had raped and robbed a woman he had been following. Specifically, Westerman stated that he and plaintiff were

---

[2] While plaintiff denies that the substance of the statements made by Scruggs are true, he does not deny that Scruggs in fact made the statements attributed to him to Detective Kanehl.

[3] Again, while plaintiff denies that the substance of the statements made by Westerman are true, he does not deny that Westerman made the statements attributed to him to Detective Kanehl.

3

walking on 233rd Street when they passed a woman walking in the opposite direction. Plaintiff began to follow the woman, but Westerman continued on to a friend's house. Westerman, however, returned to his own house because there was no one at his friend's house. Ten minutes after Westerman had arrived at his residence, plaintiff banged hard on the side door. Westerman let plaintiff in, and, soon after, the police were outside Westerman's residence. Plaintiff told Westerman that he had grabbed the woman, taken her between driveways and fired a shot into the air to let her know that he was serious. Plaintiff also told Westerman that a neighbor had looked out the window, and he dragged the victim into a yard on the corner of Westerman's block. Plaintiff said that he took the woman's jewelry because she did not have any money. Plaintiff further told Westerman that he made the woman pull down her pants, told her to perform oral sex on him, and tried to rape her from behind. After obtaining Westerman's statements, Detective Kanehl believed he had probable cause to arrest plaintiff on the rape charge, but he did not believe he had probable cause on the murder charge. Therefore, Detective Kanehl did not arrest plaintiff and continued his investigation with respect to the murder charge.[4]

---

[4] Since, as explained below, the court finds probable cause as to plaintiff's arrest for the rape, it is unnecessary to recite all of the facts developed from later investigation that defendants claim support a finding of probable cause on the murder charge. The facts regarding Smith's murder, however, provide some insight into the investigation conducted by Detective Kanehl. On November 10, 1996, Smith's body was found with gunshot wounds to his head, and three spent casings recovered at the scene of the homicide matched the spent casing found at the scene of the rape. Upon interviewing Scruggs, Detective Kanehl learned that on November 10, 1996, plaintiff made a statement that Scruggs understood to mean that plaintiff was going to kill someone. Westerman also told Detective Kanehl that "Slick Don did a body." Based on the information he had gathered, Detective Kanehl arranged to interview plaintiff on December 4, 1998 at the 105th Precinct. During the interview, plaintiff stated that he knew Mark Braithwaite. Thus, on December 7, 1998, Detective Kanehl interviewed Braithwaite, who stated that he had allowed plaintiff to stay in the same house where Smith resided. On February 28, 1999, Detective Kanehl interviewed Ann Foster, Braithwaite's ex-girlfriend, who stated that it was her understanding that plaintiff had been on the run from the police since 1997. Detective Kanehl

On July 13, 1999, Detective Kanehl arrested plaintiff without a warrant. On that same day, a lineup was conducted in which plaintiff was a participant. The rape victim did not identify plaintiff as the rapist, picking a "filler" instead.[5] It is undisputed that on the day of plaintiff's arrest Detective Kanehl knew that the weapon used in the crimes had not been recovered; a palm print that had been taken from an automobile against which the rape took place did not match plaintiff's palm; the rape test kit that was administered to the victim had not recovered any DNA, semen, blood, saliva, hair, or other physical evidence matching plaintiff; and none of the property stolen during the crimes had been recovered from plaintiff or his residence.

On August 13, 1999, a grand jury indicted plaintiff for two counts of murder in the second degree, in violation of New York Penal Law § 125.25(1) and (2); one count of rape in the first degree, in violation of New York Penal Law § 130.35; four counts of sodomy in the first degree, in violation of New York Penal Law § 130.50(1); one count of robbery in the first degree, in violation of New York Penal Law § 160.15(2); two counts of criminal possession of a weapon in the second degree, in violation of New York Penal Law § 265.03; and two counts of criminal possession of a weapon in the third degree, in violation of New York Penal Law § 265.02 (4). On October 26, 1999, Justice Robert Hanophy reviewed the grand jury minutes and found that there was sufficient legal evidence to sustain the grand jury's indictment. The State moved to dismiss one count of murder in the second degree (depraved indifference murder) and two counts of sodomy in the first degree,

---

then again interviewed plaintiff on March 25, 1999.

     [5] On November 16, 1996, a lineup had been conducted in which plaintiff had not participated. The rape victim picked out an individual from the lineup as the rapist, and she had previously identified the same individual as the rapist from a photograph. Initially, that person had been charged with the rape, but it had been determined that he was not the perpatrator.

and those charges were dismissed and not submitted to the jury. On October 3, 2002, after a trial, plaintiff was acquitted of all charges. Plaintiff had been imprisoned from the time of his arrest to the day after he was acquitted.

## II. DISCUSSION

Defendants move for summary judgment on all the federal and state claims, except the negligence claim, on the grounds that, inter alia, there was probable cause for plaintiff's arrest and prosecution, Detective Kanehl is entitled to qualified immunity, and plaintiff cannot establish a Section 1983 municipal liability claim. Alternatively, they ask the court to decline to exercise supplemental jurisdiction over plaintiff's state law claims. Plaintiff moves for summary judgment on his federal and state false arrest and imprisonment and malicious prosecution claims on the ground that no probable cause existed for his arrest and prosecution.

### A. Summary Judgment Standard

Summary judgment is appropriate when there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson,* 477 U.S. at 247-48. The substantive law will identify which facts are material, and only those facts that might affect the outcome of a suit will preclude summary judgment. *Id.* at 248. A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* In defending against a motion for summary judgment, the non-moving party may not rely on mere allegations, but rather must submit some evidence, by affidavits or otherwise,

showing a genuine issue of material fact. FED. R. CIV. P. 56(e); *Anderson,* 477 U.S. at 249. The court must resolve all ambiguities and draw all reasonable inferences in favor of the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### B. Section 1983 Claims

#### 1. False Arrest and False Imprisonment

To prevail on a claim for false arrest or false imprisonment, whether under state law or under Section 1983, a plaintiff must prove that: "(1) the defendant . . . intended to confine the plaintiff; (2) the plaintiff was conscious of the confinement; (3) the plaintiff did not consent to the confinement; and (4) the confinement was not otherwise privileged." *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994) (setting forth the elements for false arrest under state law); *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996) (stating that a Section 1983 claim for false arrest is substantially the same as a claim for false arrest under New York law); *see Covington v. City of New York*, 171 F.3d 117, 125 (2d Cir. 1999) ("False arrest is simply an unlawful detention or confinement brought about by means of an arrest rather than in some other way and is in all other respects synonymous with false imprisonment."). The existence of probable cause is a complete defense to a false arrest claim whether that claim is brought under state law or under Section 1983. *Weyant*, 101 F.3d at 852.

Probable cause exists when the arresting officer has "knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed . . . a crime . . . ." *Boyd v. City of New York*, 336 F.3d 72, 75 (2d Cir. 2003); *Weyant*, 101 F.3d at 852; *Taylor v. City of New York*, 269 F. Supp. 2d 68, 73 (E.D.N.Y. 2003). Probable cause is a practical, nontechnical concept that deals with

7

"the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (*citing Illinois v. Gates*, 462 U.S. 213, 231 (1983)). Furthermore, "probable cause is a fluid concept--turning on the assessment of probabilities in particular factual contexts--not readily, or even usefully, reduced to a neat set of legal rules." *Gates*, 462 U.S. at 232. Probable cause depends on the totality of the circumstances. *Pringle*, 540 U.S. at 371. In determining whether an officer had probable cause to arrest an individual, a court must examine the events leading up to the arrest, the actual information the officer had at the time of the arrest, and then decide whether those facts, viewed from the standpoint of an objectively reasonable police officer, amount to probable cause. *Pringle*, 540 U.S. at 371; *O'Neill v. Town of Babylon*, 986 F.2d 646, 650 (2d Cir. 1993). A court can determine as a matter of law whether probable cause to arrest existed if "the pertinent events and knowledge of the officers" are not disputed. *Weyant*, 101 F.3d at 852. Under New York law, an arrest made without a warrant raises a rebuttable presumption that such arrest was unlawful, and the defendant has the burden of raising and proving the affirmative defense of probable cause. *Curry v. City of Syracuse*, 316 F.3d 324, 335 (2d Cir. 2003).

The undisputed evidence here is sufficient for an officer of reasonable caution to have believed plaintiff raped and robbed Karla Phillips. Detective Kanehl had information, in the form of statements by four people, that was very detailed and corroborative as to the details of the rape. In telling the police officers that she was raped and robbed behind a residence on 233rd Street, the rape victim stated that the man grabbed her from behind, put a gun to her head, fired a shot into the air, whereupon someone looked out the window and screamed. While uncorroborated allegations of a victim alone will not necessarily establish probable cause, information about criminal activity

provided by a single person can establish probable cause when the information is sufficiently reliable and corroborated. *Wu v. City of New York*, 934 F.Supp. 581, 587 (S.D.N.Y. 1996). Here, the statements obtained from Westerman corroborate the victim's description of events almost exactly, and Westerman specifically names plaintiff as the rapist. Scruggs' statements as to what Westerman told him are essentially the same. Westerman stated he and plaintiff were walking on 233rd Street when they passed a woman walking in the opposite direction, and plaintiff began to follow the woman. Westerman stated that plaintiff admitted to grabbing the woman, taking her between driveways, and firing a shot into the air. According to Westerman, plaintiff told him that he dragged the woman into a yard when a neighbor looked out the window, that he made her pull down her pants, told her to perform oral sex on him, and tried to rape her from behind. The statements given by the witness, Claire Williams, corroborate both the gunshot and the time and location of the rape. In addition, Westerman's statements not only identify plaintiff as the rapist, but they place him at the location of the rape. Finally, that plaintiff went to Westerman's residence, which was only three blocks from where the rape occurred, provides a reason for why the police officers at the scene on the night of the rape were unable to catch him despite the fact that they searched the area immediately following the rape.

Plaintiff argues that the information Detective Kanehl obtained from Scruggs was unreliable because it was obtained in exchange for a reduced sentence. An informant's veracity and reliability and his basis of knowledge are relevant factors in determining whether there was probable cause for a warrantless arrest. *Gates*, 462 U.S. at 233. Plaintiff's argument, however, is unpersuasive considering that Scruggs' statements were confirmed by Westerman, by the victim, and by Claire Williams. Westerman's statements are reliable since he was not receiving anything in exchange for

9

his statements, and they could have implicated him as an accomplice to plaintiff's escape.

Plaintiff also argues that Scruggs' and Westerman's statements regarding what plaintiff said are inadmissible hearsay and thus are insufficient to establish probable cause on this motion. Although hearsay evidence may not be used to support a motion for summary judgment, *Sarno v. Douglas Elliman Gibbons & Ives, Inc.*, 183 F.3d 155, 160 (2d Cir. 1999), here the statements made by Scruggs and Westerman regarding plaintiff's admissions are not being offered for the truth of the matter asserted, i.e., that plaintiff in fact raped the victim, but rather the statements are being offered to show the information Detective Kanehl had when he arrested the plaintiff. The statements may also be viewed as showing Detective Kanehl's state of mind at the time of the arrest. Viewed in that way, the statements fall into an exception to hearsay under Rule 803(3) of the Federal Rules of Evidence. *See generally Martin v. Tatro*, 04-CV-800, 2005 WL 2489905 at *2, n.5 (N.D.N.Y. 2005). Thus, the statements made by Scruggs and Westerman are not inadmissible hearsay on this motion.

Finally, plaintiff points to the fact that Detective Kanehl knew that: (1) the rape victim had previously identified someone else as the rapist in a lineup;[6] (2) the weapon that was used in the crimes was never recovered; (3) a palm print taken from the rape scene did not match plaintiff's palm; and (4) the rape test kit administered to the victim did not yield any DNA, semen, blood, saliva, hair, or other physical evidence matching that of plaintiff. Plaintiff further points out that none of the property stolen during the crimes was recovered from plaintiff or from his residence.

As stated above, probable cause deals with probabilities and depends on the totality of the

---

[6] Plaintiff also notes that the rape victim picked someone else out of a lineup in which plaintiff participated, but that occurred after plaintiff was arrested and thus is not relevant to whether there was probable cause to arrest plaintiff. *See O'Neill*, 986 F.2d at 649-50.

circumstances. In determining whether there was probable cause for an arrest, the evidence "must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement." *Texas v. Brown*, 460 U.S. 730, 742 (1983). The undisputed evidence established that Detective Kanehl conducted a lengthy investigation and approached the decision whether to arrest plaintiff with caution. After obtaining the statements of the victim, Scruggs, Westerman, and Williams, Detective Kanehl concluded he had probable cause to arrest plaintiff. That the rape victim had previously identified someone who proved not to be the perpetrator does not eliminate the probability that plaintiff was the rapist. Nor did the absence of corroborating physical evidence linking plaintiff to the crime do so. Rather, taking all of the evidence together, as discussed above, a reasonable police officer, under the totality of the circumstances, could have believed that plaintiff raped Karla Phillips.[7] In sum, on the undisputed facts, defendants have met their burden of proving that there was probable cause for plaintiff's arrest.

In any event, at a minimum, Detective Kanehl is entitled to qualified immunity. *See Martinez v. Simonetti*, 202 F.3d 625, 634 (2d Cir. 2000) (stating that in the context of a qualified immunity defense, the defending officer need only show "arguable" probable cause); *see also Boyd*, 336 F.3d at 76 (stating that "[a]rguable" probable cause exists "if police officers of reasonable competence could disagree as to whether there was probable cause"). Thus, defendants are entitled to summary judgment on plaintiff's false arrest and imprisonment claims.

### 2. Malicious Prosecution

---

[7] The evidence compiled by Detective Kanehl also implicated plaintiff in the murder of Dean Smith. It is unnecessary to address the evidence regarding Smith's murder, since I have found that probable cause existed for plaintiff's arrest on the rape charge.

To succeed on a claim of malicious prosecution, plaintiff must show that: (1) defendants commenced or continued a criminal proceeding against plaintiff; (2) the proceeding terminated in plaintiff's favor; (3) there was no probable cause for the criminal proceeding; and (4) defendants initiated the criminal proceeding out of actual malice. *Bonide Prods., Inc. v. Cahill*, 223 F.3d 141, 145 (2d Cir.2000); *Neal v. Fitzpatrick*, 250 F. Supp. 2d 153, 154 (E.D.N.Y. 2003).

Plaintiff cannot establish that the criminal proceeding lacked probable cause. An indictment by a grand jury creates a rebuttable presumption of probable cause for a criminal proceeding. *Rothstein v. Carriere*, 373 F.3d 275, 282-83 (2d Cir. 2004). Here, a grand jury indicted plaintiff for the rape and robbery of Karla Phillips and the murder of Dean Smith. Justice Robert Hanophy reviewed the grand jury minutes and found that there was sufficient legal evidence to sustain the grand jury's indictment.

Plaintiff responds that the indictment was obtained by false testimony. Specifically, he asserts that Detective Kanehl falsely testified that the rape victim picked plaintiff out of a lineup on July 9, 1999 as the man who raped her. Under New York state law, the presumption of probable cause may be overcome by evidence that the grand jury indictment was obtained by "fraud, perjury, the suppression of evidence, or other police conduct undertaken in bad faith." *Rothstein*, 373 F.3d at 283; *Bernard*, 25 F.3d at 104. The rape victim's deposition testimony was that she picked out "number five" in the lineup conducted on July 19, 1999. Detective Kanehl's testimony was that subject number five was a "filler" and that subject number six, plaintiff, was the person under investigation. Therefore, plaintiff's reading of Detective Kanehl's deposition testimony is in error, and he has not rebutted the presumption of probable cause. Accordingly, defendants are entitled to summary judgment on plaintiff's malicious prosecution claim.

### 3. Abuse of Process

To succeed on a claim for abuse of process, plaintiff must establish that defendants (1) employed regularly issued legal process to compel performance (or forbearance) of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside the legitimate ends of the process. *Savino v. City of New York*, 331 F.3d 63, 76 (2d Cir. 2003). Since I have concluded that there was probable cause for plaintiff's arrest and prosecution, defendants had an excuse and justification for employing regularly issued process. *See Granato v. City of New York*, 98-CV-667, 1999 WL 1129611 *7 ( E.D.N.Y. 1999) (stating that "[i]t is true that probable cause as such, is not an element of the tort of abuse of process. But it is no less true under New York law that a showing of probable cause at the time process issued suffices also to establish 'excuse or justification' for the purposes of a defense to abuse of process." (citations omitted)). Therefore, summary judgment is granted in favor of defendants on plaintiff's abuse of process claim.

### 4. Municipal Liability

On February 8, 2006, plaintiff's counsel represented to the court that plaintiff had abandoned his federal claims under *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978), and is asserting only state claims against the City of New York. Accordingly, plaintiff's *Monell* claims are deemed abandoned and are not addressed in this motion.

**C.  State Law Claims**

Since claims for false arrest and false imprisonment, malicious prosecution, and abuse of process are no different whether brought under Section 1983 or under state law, summary judgment is also appropriate in favor of defendants on plaintiff's state law claims for false arrest and false

imprisonment, malicious prosecution, and abuse of process. *See Boyd*, 336 F.3d at 75; *see generally Savino*, 331 F.3d at 75-76 (analyzing simultaneously abuse of process claim and Section 1983 claim based on abuse of process). I decline to exercise supplemental jurisdiction over plaintiff's state law claim for negligence since defendants are entitled to summary judgment on all of plaintiff's federal claims.[8] *See Tops Mkts., Inc. v. Quality Mkts., Inc.*, 142 F.3d 90 (2d Cir. 1998) (stating that a district court, in its discretion, may decline to exercise supplemental jurisdiction over state law claims and dismiss them without prejudice if it has dismissed all federal claims).

### III. CONCLUSION

For the foregoing reasons, defendants' motion for summary judgment is granted as to plaintiff's Section 1983 and state law claims for false arrest and imprisonment, malicious prosecution, and abuse of process. Plaintiff's motion for summary judgment is denied in its entirety. The Clerk of Court is directed to enter judgment accordingly.

Since this court declines to exercise supplemental jurisdiction over plaintiff's remaining state law claim, namely, his claim for negligence, that claim is dismissed without prejudice.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

_____/s/_____
**NINA GERSHON**
**United States District Judge**

---

[8] Defendants argue that plaintiff's state law abuse of process and negligence claims should be dismissed because plaintiff failed to file a notice of claim as required by N.Y. Gen. Mun. L. § 50-e. However, since plaintiff's abuse of process claim fails on the merits and the court declines to exercise jurisdiction over the remaining state claim, the court does not address defendants' argument.

14

Dated: Brooklyn, New York
       March 7, 2006